**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **CASEY LAWSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:13-cv-00420** |
| ) | |
| **THOMPSON, et al,** ) | **Judge Sharp** |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

## MEMORANDUM

Plaintiff Casey Lawson brings claims under 42 U.S.C. § 1983 against all Defendants for violations of his Fourth Amendment right to be free from unreasonable seizure of his personal property (Count I). The defendants[1] are the Fifteenth Judicial District Drug Task Force ("15th JDDTF" or "Drug Task Force"); Smith County; Trousdale/Hartsville County ("Trousdale County"); Michael Thompson, director of the 15th JDDTF, and sued in his official and individual capacities; Charles Hopper, sheriff of the Smith County Sheriff's Department ("SCSD"), and sued in his official and individual capacities; Christopher Jenkins, an SCSD detective, and sued in his official and individual capacity; Brandon Gooch, a detective for the Hartsville/Trousdale County Sheriff's Department ("TCSD") assigned to the 15th JDDTF, and sued in his official capacities as a TCSD detective and 15th JDDTF agent and in his individual capacity; and Steve Babcock, an SCSD detective assigned to the 15th JDDTF, and sued in his official capacities as an SCSD detective and 15th JDDTF agent and in his individual capacity. Plaintiff Lawson also brings various state law claims against Defendants (Counts II-VI).

---

[1] The employment positions of the defendants are those defendants held at the time of the events relevant to this lawsuit.

Pending before the Court are Defendants' Motions for Summary Judgment, (Docket Nos. 57, 63, 66), to which Plaintiff Lawson has filed Responses in Opposition, (Docket Nos. 71, 76, 80), and Defendants have replied, (Docket Nos. 90, 93). For the reasons set forth below, the Court will grant Defendants' Motions for Summary Judgment. However, the Court's ruling is limited to Plaintiff's federal claims only, and all state claims will be dismissed without prejudice.[2]

## FACTUAL BACKGROUND

In July 2011, Plaintiff Lawson became a confidential informant ("C.I.") for the 15th JDDTF. (Docket No. 78 at 3, ¶¶ 8-9). As a C.I., Plaintiff Lawson assisted in several controlled buys and sales of drugs. (Id. at 4, ¶ 11).

On April 2, 2012, the Smith County Grand Jury returned sealed indictments against nineteen individuals. (Id. at 6, ¶ 20). The majority of the indictments were for drug-related offenses. (Docket No. 82 at 9, ¶ 29). On that same day, Plaintiff Lawson approached Defendant Hopper and Defendant Thompson and told them the current address of the Frenches, who had been indicted under seal. (Docket No. 78 at 7, ¶ 22; id. at 8, ¶ 25). That action indicated to Defendant Thompson that Plaintiff Lawson knew about indictments he should not have known about. (Docket No. 78 at 7, ¶ 22). Only one of the nineteen people indicted – Nancy Berry, a person with whom Plaintiff Lawson had engaged in a controlled buy of cocaine – was located in the round-up, which was an unusually low number. (Id. at 7, ¶¶ 21, 23, 24).

When Berry was arrested on April 10, 2012, a search of her phone revealed that she had received a text message from Plaintiff Lawson's cell phone number stating, "You got 3 indictments today." (Docket No. 78 at 7, ¶ 23; Docket No. 82 at 9, ¶ 30). Defendant Thompson

---

[2] Because the Court only addresses Plaintiff's federal claims, the factual background contains only those facts relevant to the federal claims.

and Defendant Hopper interviewed Berry after the arrest, and Berry told them that Plaintiff Lawson had tipped off both her and Andrew Gibbs about their sealed indictments, leading Gibbs to go on the run, and that Plaintiff Lawson was still a "heavy" user of crack cocaine. (Docket No. 78 at 8, ¶ 25). Berry also said that Plaintiff Lawson's wife, Capri Lawson, knew about or was also involved with tipping off drug offenders about sealed indictments against them. (Id.). Berry agreed to have a wire concealed in her purse to investigate the Lawsons' involvement in tipping off drug offenders about their sealed indictments. (Id. at 8, ¶ 27).

From the Smith County Jail, Berry called Buddy's Bonding Company, where Capri Lawson wrote bonds, asking to be bailed out. (Id. at 9, ¶ 28; Docket No. 73 at 4, ¶ 18). Both Plaintiff Lawson and Capri Lawson went to the jail. (Docket No. 78 at 9, ¶ 28). Defendant Gooch, who was informed by Defendant Thompson that Berry had agreed to wear a wire, monitored Berry's conversations. (Docket No. 73 at 4, ¶¶ 16-17). Berry spoke briefly with Plaintiff Lawson and told him, "[Law enforcement] took my phone," and Plaintiff Lawson asked her if anything was on it. (Docket No. 78 at 9, ¶ 30).

Capri Lawson bailed out Berry and agreed to drive Berry to a motel in Carthage, TN. (Docket No. 73 at 5, ¶ 22; Docket No. 78 at 9, ¶ 31). While Capri Lawson and Berry were sitting in Lawsons' Cadillac CTS-V in the jail parking lot, Defendant Gooch, who was monitoring the conversation, overheard Berry say to Capri Lawson that the Drug Task Force was "on to them." (Docket No. 73 at 6, ¶ 24). Defendant Gooch also heard Capri Lawson call Andrew Gibbs, one of the drug offenders indicted under seal, to warn him that the Drug Task Force had discovered the plot to leak sealed indictments. (Id. at 6, ¶¶ 25-26). Berry, over Capri Lawson's phone, told Gibbs that, "They're looking for you," referring to the Drug Task Force or law enforcement in general. (Id. at 6, ¶ 27).

Based on the information gathered, Defendant Thompson requested that Defendant Jenkins apply for a search warrant for the Lawsons' cell phone records. (Docket No. 78 at 10, ¶ 36). Defendant Thompson provided the information for the search warrant application, and the District Attorney's Office approved the application before Defendant Jenkins submitted it to a judge. (Id. at 10, ¶ 37; Docket No. 82 at 11, ¶¶ 41-43). On April 12, 2012, Smith County Criminal Court Judge David Durham issued the search warrant for the cell phones. (Docket No. 78 at 11, ¶ 39).

After execution of the search warrant, an analysis of the cell phones revealed text messages suggesting Plaintiff Lawson's direct involvement in alerting indicted drug offenders of their sealed indictments, and Capri Lawson's likely direct involvement, or knowledge of, Plaintiff Lawson's tipping off indicted offenders. (Id. at 11, ¶ 40). For example, one text message from Plaintiff Lawson's phone said, "HIDE HIDE OLD BUDDY YOU GOT 3 INDICTMENTS TODAY BUT THEY AINT SERVING THEM TILL FRIDAY." (Id. at 11, ¶ 41). There were also text messages that stated that Plaintiff Lawson was blackmailing, or attempting to blackmail, someone; messages discussing firearms Plaintiff Lawson was attempting to trade or sell; and messages suggesting possible illegal surveillance activities. (Id. at 12, ¶ 47; Docket No. 82 at 12, ¶ 46).

On April 13, 2012, Plaintiff got a text message from Jermaine Phillips' cell phone number that said, "HEY YOU THINK YOU CAN GET THE SMOKE BY THE TIME WE GET READY TO LEAVE AROUND 5:00 PM [?]" (Docket No. 78 at 11, ¶ 42). On that same afternoon, Defendant Thompson saw Plaintiff Lawson driving a Ford F250 pickup truck. (Id. at 12, ¶ 43).

Based on the information in the text messages, Defendant Thompson advised law enforcement to apply for a search warrant for the Lawsons' residence at 405 Third Avenue East in Carthage, TN.  (Id. at 13, ¶ 49).  Defendant Thompson supplied the information that went into Defendant Jenkins' search warrant application for the Lawsons' residence, and the District Attorney's Office reviewed the application.  (Id. at 13, ¶ 50; Docket No. 82 at 16, ¶ 59).  On May 2, 2012 at 8:18 a.m., Judge John Wootten issued a search warrant.  (Docket No. 73 at 9, ¶ 40).  It authorized the search of the house, outbuildings, and vehicles at the Lawsons' residence and contained a specific property list to be searched for, including firearms, narcotics and drug paraphernalia, surveillance equipment, recording devices, video storage devices, cellular devices, and paper records.  (Docket No. 78 at 14, ¶ 53; Docket No. 63-1 at 33).

On the morning of May 2, 2012, Defendants Thompson and Jenkins held a meeting to brief Defendant Gooch, Defendant Babcock, Defendant Hopper, and others about the search warrant to be executed.  (Docket No. 78 at 14, ¶ 54).  After the meeting, Defendant Babcock, Defendant Gooch, and one other drove to the Lawsons' residence, entered with Capri Lawson's permission, secured the residence, and waited for Defendant Jenkins to arrive with the search warrant before commencing the search.  (Docket No. 73 at 9, ¶¶ 37-38; Docket No. 78 at 15, ¶¶ 56-58).

On that same morning, the Smith County chief deputy called Plaintiff Lawson to come to the Smith County Sheriff's Department, and Plaintiff Lawson arrived in the Cadillac CTS-V after the officers' search warrant briefing meeting had concluded.  (Id. at 15, ¶ 59).  When Plaintiff Lawson arrived, Defendant Thompson asked Plaintiff Lawson to empty his pockets, and Plaintiff Lawson willingly submitted to a pat-down for weapons.  (Id. at 15, ¶ 60).  Plaintiff Lawson was then given his Miranda warning and interviewed by Defendant Jenkins and

Defendant Thompson.  (Id. at 16, ¶¶ 61-62).  During the interview recorded audio-visually, Plaintiff Lawson told Defendant Thompson that he had told Jermaine Phillips that people were known to buy and sell marijuana at a certain trailer park in Carthage, TN.  (Docket No. 78 at 16, ¶¶ 62, 65; Docket No. 79-1 at 2, ¶ 13).

Sometime between 10:00 to 10:30 a.m. on May 2, 2012, Defendant Thompson, Defendant Jenkins, and Carthage Police Department officers arrived at the Lawsons' residence with the search warrant and executed the search.  (Docket No. 78 at 21, ¶ 88-89).  Defendant Hopper also arrived at the Lawsons' residence and participated in the search pursuant to the warrant.  (Docket No. 82 at 18, ¶ 63).

During the execution of the search, items of personal property inside the Lawsons' residence were seized and logged, mostly by Defendant Babcock with a few entries made by Defendant Gooch, on a search warrant return that was then signed by Defendant Jenkins. (Docket No. 78 at 23, ¶ 95; Docket No. 63-1 at 35-36).  Defendant Gooch did not carry any of the items out of the house.  (Docket No. 73 at 11, ¶ 46).  The search warrant return was submitted to Judge Wootten.  (Docket No. 78 at 23, ¶ 96).  Items taken as evidence by the Smith County Sheriff's Department included equipment for surveillance activities, paper records, phones, recording devices, several guns, and computers.  (Id. at 23, ¶ 97; Docket No. 82 at 18, ¶ 64).  Defendant Gooch searched the Ford F250 pickup truck that was parked in the driveway of the Lawsons' residence.  (Docket No. 73 at 11, ¶ 47).  No narcotics or drug paraphernalia were found inside the residence during the search or inside the Ford F250.  (Docket No. 78 at 23, ¶ 98; Docket No. 73 at 11, ¶ 49).  Defendant Jenkins completed an incident report, detailing the investigation and search, pursuant to Smith County Sheriff Department policy.  (Docket No. 82 at 19, ¶ 69).

As the search concluded on May 2, 2012, Defendant Gooch gave a Notice of Seizure form to Capri Lawson listing the Ford F250 truck, $255 in U.S. currency, and a Wells Fargo Safe. (Docket No. 73 at 11, ¶ 50). Defendant Gooch also filled out a Notice of Seizure form for the Cadillac CTS-V that Plaintiff Lawson had driven to the Smith County Sheriff's Department on May 2, 2012. (Docket No. 78 at 25, ¶ 106).

Defendant Thompson asked Defendant Gooch to appear before Trousdale County General Sessions Judge Kenny Linville to pursue forfeiture of the two vehicles and the $255 U.S. currency. (Id. at 26, ¶ 111). Defendant Thompson provided Defendant Gooch a written document explaining the reason for the seizure/forfeiture of those items, and he fully briefed Defendant Gooch on the rationale. (Id. at 26, ¶ 112).

Defendant Gooch testified before Judge Linville, who found probable cause for forfeiture of the two vehicles and the U.S. currency, and he issued forfeiture warrants for them. (Id. at 27-28, ¶¶ 117-118). The Drug Task Force Office then sent notice of the forfeiture warrants to the Tennessee Department of Safety, which decided to proceed with the forfeitures and sent notices to the Lawsons. (Id. at 28, ¶ 120; Docket No. 73 at 15, ¶ 68). Capri Lawson filed to challenge the forfeiture of the vehicles and the U.S. currency in a hearing before an administrative law judge ("ALJ") in Cookeville, TN on April 3, 2013. (Docket No. 78 at 28, ¶ 121). The ALJ ruled that the vehicles and cash be returned to Capri Lawson. (Id. at 29, ¶ 123).

**STANDARD OF REVIEW**

Summary judgment "is appropriate only where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Whitfield v. Tennessee, 639 F.3d 253, 258 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)). Where a moving

party without the burden of proof at trial seeks summary judgment, the movant "bears the initial burden of showing that there is no material issue in dispute." Lindsay v. Yates, 578 F.3d 407, 414 (6th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" Blizzard v. Marion Tech. Coll., 698 F.3d 275, 282 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citation omitted). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Blizzard, 698 F.3d at 282 (internal quotations and citations omitted).

## ANALYSIS

### I.      Federal Claims

42 U.S.C. § 1983, in pertinent part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." Waters v. City of Morristown, TN, 242 F.3d 353, 358–59 (6th Cir. 2001) (citation omitted).

### A.  Plaintiff's Fifth and Fourteenth Amendment claims will be dismissed

At the outset, the Court notes that, even though Plaintiff Lawson predicates his § 1983 claim only upon Defendants' alleged violations of the Fourth Amendment in his Counts, Plaintiff also generally alleges a "[v]iolation of his constitutional rights under the Fifth and Fourteenth Amendments . . . to be free from deprivation of property without due process of law and without just compensation." (Docket No. 1 at 14, ¶ 47(b)). The Court agrees with Defendants' contention that Plaintiff's Fifth Amendment claim must be dismissed and that, to the extent Plaintiff asserts a Fourteenth Amendment due process claim, it, too, must be dismissed.

Because Plaintiff references the "just compensation" clause of the Fifth Amendment, the Court infers that Plaintiff alleges a taking. However, a Fifth Amendment takings claim is not ripe until a plaintiff has sought available state remedies. See Arnett v. Myers, 281 F.3d 552, 562 (6th Cir. 2002) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.") (quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985)). The state of Tennessee provides adequate procedures for seeking just compensation, and Plaintiff has not asserted that he has used them. Therefore, Plaintiff's Fifth Amendment takings claim will be dismissed.

Insofar as Plaintiff alleges a Fifth Amendment due process violation, that claim is subject to dismissal because "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." See Scott v. Clay Cty., Tenn., 205 F.3d 867, 873 n.8 (6th Cir. 2000) (citations omitted). As such, Plaintiff's "citation to the Fifth Amendment Due Process Clause [is] a nullity, and redundant of [his] invocation of the Fourteenth Amendment Due Process Clause." See id.

Plaintiff's Fourteenth Amendment due process claim will also be dismissed because "where a particular amendment 'provides an explicit textual source of constitutional protection' . . . 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing such a claim.'"  See Kiser v. Kamdar, 831 F.3d 784, 791 (6th Cir. 2016).  Any due process claim that Plaintiff may have arises from the same alleged conduct by the Defendants that Plaintiff alleges violated his Fourth Amendment right.  Therefore, Plaintiff's § 1983 claim will be analyzed under the Fourth Amendment.

However, before turning to Plaintiff's Fourth Amendment claim, the Court will address some threshold issues.

**B.  Claims against Defendants in their official capacity will be dismissed**

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 68 (1989).  "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[,]" and "the real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ."  Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotations and citations omitted).  Here, the real parties in interest for Plaintiff's § 1983 claims are Smith County, Trousdale County, and the 15th JDDTF.  All three are named defendants in this action.  For that reason, this Court will dismiss claims against Defendants Thompson, Hopper, Jenkins, Gooch, and Babcock in their official capacities.  See Nance v. Wayne Cty., 264 F.R.D. 331, 334 n.1 (M.D. Tenn. 2009) (dismissing official capacity claims against the sheriff and mayor because county was a named defendant); see also Willis v. Neal, No. 1:04 CV 305, 2006 WL 270288, at *13 (E.D. Tenn. Feb. 1, 2006), order vacated on reconsideration, No. 1:04-CV-305, 2006 WL

1129388 (E.D. Tenn. Apr. 24, 2006), <u>aff'd,</u> 247 F. App'x 738 (6th Cir. 2007) ("Plaintiff has also sued each of [defendants] in their respective official capacities as members of the 12th Judicial District Drug Task Force (the "Task Force"). . . Therefore, plaintiff's claims against [defendants] in this capacity are, in essence, claims against the Task Force.").

**C. Defendant 15th JDDTF has not presented enough evidence for the Court to conclude definitively that it is a state agency**

Defendant 15th JDDTF argues that Plaintiff's § 1983 claim against it should be dismissed because 1) it is a state agency that cannot be sued in federal court pursuant to the Eleventh Amendment and 2), as a state agency, it is not a "person" within the meaning of 42 U.S.C § 1983. This Court will address the latter argument first, although the analysis of both is essentially the same. <u>See</u> <u>Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens</u>, 529 U.S. 765, 779 (2000) ("We nonetheless have routinely addressed *before* the question whether the Eleventh Amendment forbids a particular statutory cause of action to be asserted against States, the question whether the statute itself *permits* the cause of action it creates to be asserted against States) (emphasis in original).

"[S]tates and state employees sued in their official capacities [are] not "persons" under § 1983, and therefore [cannot] be held liable for money damages." <u>Moore v. City of Harriman</u>, 272 F.3d 769, 771–72 (6th Cir. 2001) (citing <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989)).  Therefore, the relevant inquiry is whether Defendant 15th JDDTF qualifies as an arm or agency of the state of Tennessee as opposed to an entity of local government.  As the Sixth Circuit in <u>Pucci v. Nineteenth Dist. Court</u> instructs, this Court must consider the following four factors in making that determination:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local

officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

628 F.3d 752, 760 (6th Cir. 2010) (citation omitted).

The Court has considered Defendant's and Plaintiff's arguments with respect to each of these factors. Even though Defendant 15th JDDTF provides arguments to support finding it a state agency, they are not sufficient for the Court to conclude definitively that the Drug Task Force is a state agency. This Court, in Timberlake by Timberlake v. Benton, implicitly found that a drug task force was not a state agency. See 786 F. Supp. 676, 683–84 (M.D. Tenn. 1992) ("[A] suit nominally brought against [defendant] as director of the 19th Judicial District Drug Task Force is in fact a suit against the *cities* and *counties* comprising the Task Force if [defendant] functions as a final policymaker for the Task Force.") (emphasis added). Admittedly, the case at bar differs from Timberlake in that, there, this Court did not consider the provisions from the Tennessee Code Annotated ("T.C.A.") that Defendant provides in its arguments. And other district courts in Tennessee have found drug task forces to be state agencies upon considering the T.C.A. provisions Defendant 15th JDDTF cites. See Emerson v. Madison Cnty, Tennessee, *et al*., No. 94–1266 (W.D. Tenn. March 13, 1995); Willis v. Neal, No. 1:04 CV 305, 2006 WL 270288, at *13 (E.D. Tenn. Feb. 1, 2006).

However, the Emerson and Willis courts did not consider the four factors set out by the Sixth Circuit in Pucci. Furthermore, another court in Lamb v. Tenth Judicial Dist. Drug Task Force, decided – albeit in the context of a motion to dismiss – that it could not assess the status of the drug task force using the Pucci factors without looking to the language of the agreement by which the task force was formed. See 944 F. Supp. 2d 586, 593-94 (E.D. Tenn. 2013) ("Without resort to the language of the agreement, the Court cannot consider the liability of the state or the composition of the [drug task force's] board."). This Court brought Lamb to the

attention of Defendant 15th JDDTF when the Court denied Defendant's Motion for Partial Dismissal. (Docket No. 44). Yet, Defendant 15th JDDTF has not filed any agreement with the Court. In light of this, the contradiction with respect to the board of directors' control over the Drug Task Force,[3] and it not being clear to the Court whether members of the Drug Task Force were designated by the district attorney general,[4] as required by statute for members of a drug task force to be considered state employees, the Court declines to make a finding that Defendant 15th JDDTF is a state agency. The Court further declines to rule on Defendant's Eleventh Amendment argument.[5]

Accordingly, the Court now turns to the merits of Plaintiff's Fourth Amendment claim.

### D. Defendants have not violated Plaintiff's Fourth Amendment right

Plaintiff Lawson claims that his Fourth Amendment right to be free from unreasonable seizure of his property was violated. In his Complaint, Plaintiff alleges that the action that gave rise to this constitutional violation was the seizure of "personal property, including cash, a Ford F-250 and a Cadillac CTS-V . . . seized by the Defendants without valid warrant or cause to believe that they were related to a criminal matter." (Docket No. 1 at 14-15, ¶ 52). He alleges that Defendant Jenkins omitted the fact that Plaintiff was a C.I. for Defendant 15th JDDTF when

---

[3] Defendant 15th JDDTF asserts that the district attorney general, as the chairman of the 15th JDDTF's board of directors, directs its activities and has control over who the members are. (Docket No. 90 at 10). However, Defendant Smith County contradicts this. In defending against municipal liability, Defendant Smith County argued, "[W]hile Sheriff Hopper sits on the Board of Directors of the Task Force, as do other sheriffs in the 15th Judicial District, this body does not oversee the day-to-day operations of the Task Force and does not oversee Task Force personnel." (Docket No. 93 at 4).

[4] While Defendant 15th JDDTF has provided affidavits stating that some of its members have been registered with the Board of Claims pursuant to T.C.A. § 8-42-101(3)(C), those affidavits do not state whether the members of the Drug Task Force were designated by the district attorney general. (Docket No. 91 at 30, ¶ 28; Docket No. 91-7 at 2, ¶¶ 4-7).

[5] Because the Court finds that Defendants have not violated Plaintiff's Fourth Amendment right, no harm is done to Defendant 15th JDDTF from the Court's declining to rule on whether or not it is a state agency barred from suit.

Defendant Jenkins prepared his search warrant affidavit.  Plaintiff alleges that Defendant Gooch did not follow proper procedures when obtaining a forfeiture warrant.  He claims that Defendants Thompson, Hopper, and Babcock are liable because Defendant Thompson ordered the seizure of Plaintiff's property and Defendants Hopper and Babcock substantially assisted in the search and seizure of his property.  Plaintiff further alleges that Defendants 15th JDDTF, Smith County, and Trousdale County, as employers of the individual defendants, failed to maintain certain policies and customs, which caused the violation of Plaintiff's Fourth Amendment right.  (Id. at 14-15, ¶ 52).

The Fourth Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 543 (6th Cir. 2002) (internal quotation marks omitted).  "In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized."  Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 543 (6th Cir. 2002) (citing United States v. Place, 462 U.S. 696, 701 (1983)).  "Police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable.  Thus, an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant."  Yancey v. Carroll Cty., Ky., 876 F.2d 1238, 1243 (6th Cir. 1989) (citations omitted).  "If the affidavit contains false statements or material omissions, we set aside the statements and include

the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citations omitted).

Warrants were obtained and executed in this case. The relevant ones were: 1) a search warrant for Plaintiff's residence and vehicles, for which Defendant Jenkins applied and which Judge Wootten issued, and 2) forfeiture warrants, for which Defendant Gooch applied and which Trousdale County General Sessions Judge Kenny Linville issued.

### a. Search Warrant

Plaintiff suggests, without explicitly stating, that the search warrant was defective given that Plaintiff alleges, in his Complaint, that Defendant Jenkins omitted that Plaintiff was a C.I. when applying for the search warrant. (Docket No. 1 at 15, ¶ 52). However, in responding to Defendants' Motions for Summary Judgment, it appears that Plaintiff, to the extent that he made that argument, has abandoned it. Plaintiff, in his Responses in Opposition, does not connect the alleged Fourth Amendment violation to a defect in the search warrant. Rather, he hangs the alleged violation of his constitutional right on arguments that the forfeiture warrants lacked probable cause and were void *ab initio* and on an allegation that Defendant Babcock conducted a warrantless search of Plaintiff's vehicle at the Smith County Courthouse. (Docket No. 72 at 5; Docket No. 77 at 4-5; Docket No. 81 at 4). For this reason, this Court need not address the sufficiency of the search warrant Defendant Jenkins obtained.[6] Furthermore, Plaintiff's Response to Defendants' Statement of Undisputed Facts, (Docket No. 82), belie any intimation from Plaintiff that a Fourth Amendment violation arose out of the execution of the search of his home on May 2, 2012. For example, Plaintiff concedes all of the following:

---

[6] Nevertheless, for the sake of completeness, this Court finds that the search warrant was supported by probable cause. For example, Defendants had information indicating that Plaintiff Lawson had leaked sealed indictments and text messages suggesting drug activity and his possession of weapons. Even though Plaintiff questions the significance of the drug-related text message, that does not defeat a finding of probable cause given other information available to Defendants.

> Deputy Jenkins and Sheriff Hopper complied with . . . policies and procedures with regard to the search and evidence collection at the residence of Casey and Capri Lawson. (Docket No. 82 at 7, ¶ 23).

> From Sheriff Hopper's knowledge and involvement in the investigation, he had no reason to question Christopher Jenkins with regard to his determination that there was probable cause to request a search warrant to search the residence of Casey Lawson. (Docket No. 82 at 17, ¶ 61).

> The fact that they did not find marijuana at the home of Casey Lawson at the time of the search does not make the warrant itself invalid as Deputy Jenkins believed there was probable cause for the warrant. (Docket No. 82 at 19, ¶ 68).

> Christopher Jenkins was appropriately supervised and adhered to the policies and procedures of the SCSD in his investigation of this case. (Docket No. 82 at 22, ¶ 80).

> At all times Sheriff Hopper and Deputy Jenkins acted in the course and scope of their discretionary authority and did not violate any clearly established statutory and constitutional rights of which a reasonable officer would have known. (Docket No. 82 at 21, ¶¶ 76-77).

Because Defendant Jenkins' purported liability arises from his involvement with obtaining and executing the search warrant, this Court will dismiss the claim against Defendant Jenkins in his individual capacity.

### b. Forfeiture Warrants

Plaintiff Lawson argues that Defendants Gooch and 15th JDDTF seized his property without probable cause to believe that it had been used in violation of T.C.A. § 53-11-451(a). He argues that, even though Defendant Gooch obtained forfeiture warrants from Judge Linville, the warrants, on their face, were so lacking in probable cause as to render Defendant Gooch's belief in the existence of probable cause unreasonable. (Docket No. 72 at 5; Docket No. 77 at 4-5). He further contends that Defendant Gooch failed to inform Judge Linville that Plaintiff was working as a C.I. for Defendant 15th JDDTF. Plaintiff also argues that the forfeiture warrants

were void *ab initio* because they were signed by a Trousdale County general sessions judge. (Docket No. 77 at 4).

This Court finds that the warrants were not so lacking in probable cause such that Defendant Gooch's belief in the existence of probable cause was unreasonable. Tennessee Code Annotated § 53-11-451(a)(4) authorizes the forfeiture of "[a]ll conveyances, including aircraft, vehicles or vessels that are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale or receipt of [a controlled substance]." Tennessee Code Annotated § 53-11-451(a)(6)(A) authorizes the forfeiture of "[e]verything of value furnished, or intended to be furnished, in exchange for a controlled substance . . . ." "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008) (citation omitted).

The reasons provided in the affidavit in support of the forfeiture warrants were that the $255 was believed to be proceeds from the sale of marijuana; the Ford F250 was used to facilitate the sale of drugs; and the Cadillac CTS-V was driven by Capri Lawson when she called Andrew Gibbs, who had been indicted under seal for drug trafficking, to warn him that law enforcement had discovered the plot to leak sealed indictments, making Capri Lawson an accessory after the fact to drug-trafficking offenders. (Docket No. 63-2 at 26). Defendant Gooch had a series of information available to him, through Defendant Thompson, that went into the affidavit. (Docket No. 63-2 at 10, ¶ 29; Docket No. 78 at 26, ¶ 112). For example, Jermaine Phillips sent Plaintiff a text message, which stated, "HEY YOU THINK YOU CAN GET THE SMOKE BY THE TIME WE GET READY TO LEAVE AROUND 5:00 PM[?]" And law enforcement officers saw Plaintiff driving the Ford F250 on the same day and around the same

time that Plaintiff received that text message indicating an illegal marijuana transaction. (Docket No. 63-2 at 10, ¶ 30).

Plaintiff argues that Defendant Gooch took the text message out of context when applying for the forfeiture warrant; Plaintiff never responded to the text message; Plaintiff does not have a history of selling or using drugs; and Defendant Gooch never informed Judge Linville that Plaintiff was a C.I. (Docket No. 79-1 at 2, ¶¶ 9, 14). However, Plaintiff's assertion that Defendant Gooch did not inform Judge Linville that Plaintiff was a C.I. is incorrect. The affidavit in support of the forfeiture warrants state that "CASEY IS A CI." (Docket No. 63-2 at 21, 26). In his deposition, Plaintiff makes much of the fact that Defendant chose to infer that there was a marijuana transaction, but states that the word "smoke" could have referred to many other drugs. (Docket No. 91-1 at 18-19; Dep. 72:20-73:3). Plaintiff also admits that he pled guilty to casual exchange in the past. (Docket No. 91-1 at 76; Dep. 301:2-4). Nancy Berry, one of those indicted under seal, had also told Defendant Thompson that Plaintiff was still a "heavy" user of crack cocaine. (Docket No. 63-1 at 8, ¶ 19). Plaintiff also admits that he told Phillips that people were known to buy and sell marijuana at a certain trailer park in Carthage, TN. (Docket No. 83-1 at 2, ¶ 13).

This Court cannot, viewing the facts in the light most favorable to Plaintiff, conclude that Defendant Gooch "knowingly made false statements and omissions" to Judge Linville. This is especially so when Plaintiff, in his deposition, readily said of Defendant Gooch that "in his mind he thought he was right" when Defendant Gooch indicated that the seizure of Plaintiff's property was drug related. (Docket No. 73 at 20, ¶ 93; Docket No. 91-1 at 82; Dep. 327:17-22).

Plaintiff notes in his Statement of Additional Undisputed Facts, without stating its relevance, that when Capri Lawson challenged the forfeiture in front of the ALJ, the ALJ made a

finding that "[t]here was no evidence presented that the seized vehicles were purchased with drug proceeds or that the $255 is proceeds from drug transactions." (Docket No. 91 at 24, ¶ 12). This Court concludes that a finding from the ALJ that the State has "failed to show that the cash or vehicles are subject to forfeiture pursuant to T.C.A § 53-11-451(a)(4)(6)", Docket No. 79-5 at 8, and an order that the vehicles and currency be returned are not relevant to the probable cause inquiry. See Pinnix v. Pollock, 338 F. Supp. 2d 885, 890 (W.D. Tenn. 2004) (finding that a reasonable officer could have believed that plaintiff had committed a drug offense even though plaintiff had not and his truck and currency were ordered returned).

Plaintiff also argues that the forfeiture warrants were void *ab initio* because they were signed by a Trousdale County general sessions judge. To support this argument, Plaintiff submits to the Court six judicial rulings from ALJs, five involving the 15th Judicial Drug Task Force and, in his Statement of Additional Undisputed Facts, proceeds to state findings of fact and law from those cases. But those cases are not germane to the disposition of Defendants' Motions for Summary Judgment. The Court notes only two of the six cases were decided before the seizure at issue in this case, and, in them, the ALJ simply found that the State had not carried its burden of proof and ordered seized items to be returned. See Tennessee Department of Safety v. One 2002 Chevrolet Blazer, No. 19.01-102071J (March 10, 2009); Tennessee Department of Safety v. One 2002 Chevrolet Impala, No. 19.01-102467J (September 16, 2009).

Plaintiff cites David Wayne Washer v. Department of Safety, No. 19.01-118072J (July 16, 2013), in which an ALJ found that forfeiture warrants presented to a general sessions judge in Trousdale County after seizures were made in Smith County were void because the judge lacked jurisdiction. However, the seizure at issue here was antecedent to the ruling in David Wayne Washer. Plaintiff offers no other evidence to suggest that Defendant Gooch knew that

Judge Linville lacked jurisdiction to issue the forfeiture warrants at the time Defendant Gooch sought them. Furthermore, jurisdiction and probable cause are separate issues. Plaintiff cites no authority to suggest that a finding of probable cause is automatically negated where the judge making that finding lacks jurisdiction.

For these reasons, the Court finds that the forfeiture warrants were not "so lacking in indicia of probable cause." As such, Defendant Gooch did not violate Plaintiff's Fourth Amendment right, and Plaintiff's § 1983 claim against Defendant Gooch in his individual capacity will be dismissed.[7]

### c. Search of Plaintiff's Vehicle at the Smith County Courthouse

Plaintiff Lawson also asserts that Defendant Babcock searched his Cadillac CTS-V in the parking lot of the Smith County Courthouse without a warrant. (Docket No. 91 at 4, ¶ 53). However, Defendant Babcock disputes this. Plaintiff's bald assertion is supported only by a

---

[7] In the interest of being complete, the Court notes that Plaintiff makes arguments that are ultimately non-issues. For example, Plaintiff points out that Judge Linville is not a lawyer. Tennessee Code Annotated § 40-33-204 provides that "no forfeiture action shall proceed unless a forfeiture warrant is issued in accordance with this section by a general sessions, circuit, criminal court or popularly elected city judge." While that section makes clear that a "popularly elected city judge" must be a licensed attorney, it does not say that with respect to a general sessions judge. Plaintiff also argues that Defendant Gooch did not record the forfeiture proceedings. First, the onus to record the proceeding was not on Defendant Gooch. See TCA § 40-33-204 ("All hearings on applications for forfeiture warrants under this section shall be recorded. It is the duty of the court to maintain the recording."). More importantly, failing to record a forfeiture proceeding is not a constitutional deprivation. See Rhodes v. Pittard, 485 F. App'x 113, 114, n.2 (6th Cir. 2012) ("Violations of state law are not cognizable under § 1983, which provides redress for denial of federally protected civil rights.") (citation omitted). Lastly, Plaintiff argues, and Defendants dispute, that approximately $200 above and beyond the $255 that was seized and later returned was taken from his wallet and never returned. Plaintiff cites only to his own declaration as evidence of this. (Docket No. 83-1 at 4, ¶ 23). Nevertheless, the Court notes that Plaintiff claims that Defendant Jenkins told him that "Mike Thompson's got it. If there's any money missing [from the wallet], Mike Thompson's got it and seized it." (Docket No. 91-1 at 19; Dep. 76:7-18). Plaintiff also claims there is a "recorded statement for this," referring to what Plaintiff claims Defendant Jenkins told him. (Id. at 6; Dep. 23:7-15). However, Plaintiff, referring to the "recorded statement," says, "I don't have it, but it's out there." (Id.). This is not enough evidence to defeat Defendants' Motions for Summary Judgment.

citation to his own declaration.[8]  This is insufficient to defeat Defendants' pending Motions for

Summary Judgment.  See Alexander v. CareSource, 576 F.3d 551, 560 (6th Cir. 2009)

("Conclusory statements unadorned with supporting facts are insufficient to establish a factual

dispute that will defeat summary judgment.").  Even though the Court is not required to look

through the record to find supporting facts for Plaintiff, the Court has done so and finds that

Plaintiff still comes up short.  See Shorts v. Bartholomew, 255 F. App'x 46, 50 (6th Cir. 2007)

("[W]e need not scour the record or make a case for a party who has failed to do so on his own

behalf . . . .").  In Plaintiff's deposition, he stated, "I was told that [Babcock] searched the car in

the parking lot of the Sheriff's Department."  (Docket No. 91-1 at 91; Dep. 364:9-11).  Plaintiff

answered, "I don't know. I don't know the dates," upon being asked when the alleged illegal car

search occurred.  (Id. at 92; Dep. 365:2-6).  When asked, "Was Steve Babcock part of that?",

Plaintiff replied, "I don't know."  (Id. at 92; Dep. 365:15-16).  Asked again, "You don't know

specifically whether he was part of it?", Plaintiff responded, "I don't."  (Id. at 92; Dep. 365:17-

19).  On the evidence Plaintiff Lawson presents, fair-minded jurors could not find for him.[9]

Because this Court finds that no Fourth Amendment violation has occurred, claims that

Plaintiff brings against the remaining Defendants on a theory of supervisory liability and

municipality liability must necessarily be dismissed.  See McQueen v. Beecher Cmty. Sch., 433

F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is

unconstitutional conduct by a subordinate of the supervisor."); see City of Canton, Ohio v.

Harris, 489 U.S. 378, 394 (1989) ("[M]unicipal liability can be imposed under § 1983 only

---

[8] "Also on May 2, 2012, Steve Babcock searched my vehicle without a warrant in the parking lot of the Smith County Courthouse."  (Docket No. 83-1 at 4, ¶ 24).

[9] Furthermore, assuming a warrantless search of Plaintiff's vehicle did happen, Plaintiff – as a confidential informant – consented: "I understand that I am subject to search during any meeting with an agent or investigator.  I further consent to a search of my belongings and vehicle."  (Docket No. 91-4 at 4, ¶ 6; Code of Conduct Expected of Confidential Source).

where the municipality, as an entity, can be said to be "responsible" for a constitutional violation committed by one of its employees.").

## II.     State Law Claims

Because all of Plaintiff's federal law claims against all Defendants will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

"Generally, 'if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004) (citation omitted). However, it is within the Court's discretion to dismiss remaining state-law claims. See id. In exercising that discretion, a court may consider several factors, "including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010). The Court has considered the record to determine whether Plaintiff has set out a triable issue on his federal § 1983 claims. While it is true that the parties have completed discovery, "there is no suggestion that the same discovery will not be of benefit to the parties in relation to litigating the state law claim in state court." Howard v. Smith Cty., Tenn., No. 2:10-0009, 2011 WL 4361486, at *10 (M.D. Tenn. Sept. 19, 2011). In light of this, "the concerns of judicial economy, convenience and fairness do not override the accepted principle that purely state law disputes should be decided in state court. . . ." Id. As such, the Court will dismiss Plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment, (Docket Nos. 57, 63, 66), will be granted with respect to Plaintiff's federal claims, and this case will be dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims will be dismissed without prejudice. Furthermore,

the parties' pending Joint Motion to Ascertain Status of Motions for Summary Judgment, (Docket No. 103), will be denied as moot.

A separate order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE